# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **GORGE L. CARRASQUILLO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-4837** |
| | : | |
| **JOSEPH TERRA,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**HODGE, J.**                                                           **DECEMBER 6, 2024**

Gorge L. Carrasquillo, a prisoner in custody at SCI Phoenix, filed this civil rights action naming as Defendants several employees of the Pennsylvania Department of Corrections.[1] Some Defendants are named in their individual and official capacities. Carrasquillo also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Carrasquillo leave to proceed *in forma pauperis* and dismiss the Complaint.

---

[1] The named Defendants are Superintendent Joseph Terra, Deputy of Internal Security Harold Curtis, Unit Manager Ms. Duran, Jane Doe Female Officer, John/Jane Does 1-6, John Doe #1 (RHU Nurse), John Doe #2 RHU Nurse, Lt. John Doe #1, and PRC Member "Mr. Stickly." Although not included in the list of Defendants, Carrasquillo also mentions a "John Doe #2" as being a Physician's Assistant in the medical unit. (Compl. at 7-8.) It is unclear whether John Doe #2 RHU Nurse and Physician's Assistant John Doe #2 are the same person.

In the Order that accompanies this Memorandum, the Clerk will be directed to change the name "Mr. Stickly" to "Ms. Stickly" since that is the name as Carrasquillo wrote it in his Complaint. Finally, the Court will use the spelling of the Plaintiff's first name as it appears in DOC records so that the delivery of any mail will not be problematic.

## I.    FACTUAL ALLEGATIONS[2]

Carrasquillo alleges that on February 3, 2024 he was attacked and stabbed in the head by another inmate, who then proceeded to attack his own cellmate.  (Compl. at 7.)  While the attack was happening, Defendant Jane Doe #1, a female officer posted on Unit Q-A at the time, failed to follow her training, use pepper spray to stop the attack, issue an order to the attacker to stop, or to physically intervene.  (*Id*.)  Lt. John Doe #3 handcuffed Carrasquillo and secluded him within a vestibule.  Carrasquillo told Lt. John Doe #3 that he was bleeding and was covering the wound with his hat, leading Lt. John Doe #3 to remove the hat that was soaked in blood.  (*Id*.)  When Carrasquillo told him he was feeling nauseous and dizzy, Lt. John Doe #3 said "that's what you get."  (*Id*.)  Carrasquillo claims "it took 25 minutes before I was actually escorted . . . to the medical unit."  (*Id*.)  Once there, an unidentified nurse determined that she "needed someone above her paygrade" to give permission for her to staple Carrasquillo's head wound.  (*Id*.)  To find PA John Doe #2 took several phone calls.  (*Id*. at 7-8.)  Carrasquillo overheard Lt. John Doe #3 talking to an unknown member of the security team by phone about the incident.  (*Id*. at 8.)  Carrasquillo's wound was cleaned, measured, and stapled, and he was sent to the restricted housing unit ("RHU") with his head bandaged.  (*Id*.)  He was prescribed Tylenol but no wound care.  (*Id*.)  He told an unnamed nurse in the RHU that he was dizzy and the nurse saw him vomit, but said there was "nothing I can do."  (*Id*.)  The next day, Carrasquillo asked for ointment and gauze so he could clean the wound but was told that no one had ordered it and his

---

[2] Carrasquillo used the form complaint available to unrepresented litigants to file his claims and included additional handwritten pages and attachments.  (ECF No. 1.)  The Court considers the entire submission to constitute the Complaint, to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system..  The factual allegations set forth in this Memorandum are taken from Complaint.

request was denied.  (*Id*.)  He was in the RHU for six days until he met with the program review committee ("PRC"), at which time he was released back to the general population where he began to receive wound care.[3]  (*Id*.)  While still in the RHU, Carrasquillo asked the PRC members including Defendant Superintendent Joseph Terra and Deputy of Internal Security Harold Curtis if he could be relocated to a different unit and was told no.  (*Id*. at 9.)

When an advocate from the Pennsylvania Prison Society visited him a few days later, an unidentified correctional officer "harassed and intimidated" him, saying "you ain't telling[,] right Carrasquillo?  We don't do no telling here."  (*Id*.)  At some point an unidentified nurse removed four of the eight staples from his head wound and took Carrasquillo off of the would care list.  (*Id*.)  The rest of the staples were removed almost a month later, by which time the skin had fully healed over the staples.  (*Id*.)  Removing the staples caused his head to begin to bleed.  (*Id*.)  An unidentified nurse told Carrasquillo that "everyone thought my staples had been removed."  (*Id*.)  Carrasquillo asserts that this was medical negligence.  (*Id*.)

Carrasquillo asserts a failure to protect claim because the "security department knew I had safety concerns," which led him to be moved to a different unit.[4]  (*Id*. at 11.)  Thereafter, however, the inmate whom he had identified as the safety concern was allowed to move to the

---

[3] Carrasquillo attached to his Complaint a PRC "Action Sheet" indicating that he attended the PRC meeting in the RHU and the PRC directed that he be released from administrative custody on February 8, 2024 pending available bed space.  (Compl. at 38.)  He also attached a similar form dated April 20, 2024, indicating that he would be released from administrative custody on April 25, 2024 (*id*. at 40), but it is unclear if the second form is related to the same incident.

[4] Carrasquillo attached to his Complaint copies of two grievances he filed about the incident, relating the same facts he alleged in his Complaint about the stabbing incident on February 3, 2024.  (Compl. at 15-37.)  The grievances were denied at each step of the grievance process, including on final appeal to the Secretary's Office of Inmate Grievances and Appeals. (*Id*. at 23, 32.)

same unit, and the stabbing incident followed.  (*Id*.)  Carrasquillo also asserts a claim for denial

of medical treatment.  (*Id*. at 7, 11.)  He seeks $100,000 in damages.  (*Id*. at 11.)

## II.    STANDARD OF REVIEW

The Court grants Carrasquillo leave to proceed *in forma pauperis*.  Accordingly, 28

U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage

of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,'

'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d

768, 774, 782 (7th Cir. 2015)) *abrogation on other grounds recognized by Fisher v.*

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556

U.S. at 678.  As Carrasquillo is proceeding *pro se*, the Court construes his allegations liberally.

*Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d

239, 244-45 (3d Cir. 2013)).

Also, when allowing a plaintiff to proceed *in forma pauperis* the Court must review the

pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a

proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

Carrasquillo asserts constitutional claims under the Eighth Amendment and a state law claim for medical negligence.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A.    Official Capacity Claims

Carrasquillo asserts claims for money damages against several Commonwealth employee Defendants in their official capacities.[5]  The Eleventh Amendment bars suits against a state and

---

[5] Carrasquillo checked the box next to the name of each of the Defendants he listed in the form portion of his Complaint indicating that he sued them in their individual and official capacities, specifically Terra, Curtis, Jane Doe Female Officer, and John Doe #1 (RHU Nurse). (Compl. at 4, 6.)  For those Defendants separately listed in the handwritten portion of the Complaint – Unit Manager Ms. Duran, John Doe #2 RHU Nurse, PRC Member Ms. Stickly, and

its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the Commonwealth, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity.  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.  For this reason, all official capacity claims for money damages are dismissed with prejudice.

> **B.    Lack of Personal Involvement**

Carrasquillo names as Defendants Unit Manager Ms. Duran, John/Jane Does 1-6, and PRC Member Ms. Stickly,[6] but asserts no allegations in the body of his Complaint about how

---

Lt. John Doe #1 – he did not indicate any capacity, possibly because there was no check box option presented to him.  (*Id*. at 5.)  It appears that Carrasquillo may not have understood the significance of naming Defendants in their official capacities since, where there was no check box, he did not assert official capacity claims.

[6] Although Carrasquillo attached two PRC forms to his Complaint, neither of them mention PRC Member Ms. Stickly, nor is her name one of those listed in the signature area of the forms.  Even if her name were on the form, a plaintiff may not state a claim by relying solely on exhibits.  *See Estate of Egenious Coles*, 658 F. App'x at 111 ("[W]e cannot fault the District

each of these people were involved in the incidents he describes.  For this reason, the claims against them are not plausible.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  The claims against Unit Manager Ms. Duran, John/Jane Does 1-6, and PRC Member Ms. Stickly will be dismissed; however, Carrasquillo will be permitted an opportunity to file an amended complaint to describe how these individuals were involved with his claims.[7]

---

Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."); *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

[7] If Carrasquillo files an amended complaint and names multiple John or Jane Doe defendants, he should be careful to specify which unknown defendant he refers to in any given allegation so that each unknown person's role in the incident is clear.  He may do so by listing the John or Jane Does by number, being careful to ensure that the role of that numbered person is consistent and differentiated from other numbered persons.  Carrasquillo is on notice that, without the name of at least one named individual or entity, the Court may be unable to direct service of any amended complaint that he may file.

### C.    Failure to Protect Claims

The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes. *See Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981). Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347).

For a failure to protect claim against a prison official to be plausible, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*). Deliberate indifference in the context of a failure to protect claim is a subjective standard that requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 844).

Liberally construed, Carrasquillo appears to assert failure to protect claims against Jane Doe #1 because she failed to follow her training, use pepper spray to stop the attack, issue an order to the attacker to stop, or to physically intervene; Lt. John Doe #3 who handcuffed him and secluded him within a vestibule after the attack happened, and then discussed the incident with another officer later in the medical unit; and Terra and Curtis because they refused his request to be relocated to a different unit after the incident happened. None of these claims, as alleged, is plausible. First, Carrasquillo does not allege that either Jane Doe #1 or Lt. John Doe #3 were subjectively aware of the existence of an excessive risk posed by the attacker before the incident began, even though they were perhaps on the scene or nearby when the attack began. *See Carter v. Lawler*, 446 F. App'x 420, 423 (3d Cir. 2011) (*per curiam*) (corrections officers were not deliberately indifferent to excessive risk of harm to prisoner because officers had no prior knowledge or warning that the prisoner would be involved in an altercation with the other inmate). He also offers no facts to support that either of them knew the attacker posed a substantial risk of serious harm, acted with deliberate indifference to that substantial risk, or that their deliberate indifference caused the attack to happen. In addition, the only acts attributed to Lt. John Doe #3, as well as Terra and Curtis, happened after the attack was over. Lt. John Doe #3 is only alleged to have attempted to seclude Carrasquillo from his attacker. The claims against Terra and Curtis are not plausible because they also are not alleged to have been subjectively aware of the existence of an excessive risk posed by the attacker before the incident began, knew the attacker posed a substantial risk of serious harm, acted with deliberate indifference to that substantial risk, and that their deliberate indifference caused the attack to happen. Accordingly, the failure to protect claims will be dismissed with leave to amend if Carrasquillo is able to allege additional facts to cure these defects.

### D.    Denial of Medical Care Claims

Carrasquillo appears to assert claims based on deliberate indifference to his serious medical needs against Lt. John Doe #3 because, when Carrasquillo showed him he was bleeding and told him he was feeling nauseous and dizzy, Doe #3 said "that's what you get," and because it took 25 minutes for Carrasquillo to be escorted to the medical unit.  He also appears to allege claims against PA John Doe #2 because it took several phone calls to locate him.  While Carrasquillo makes additional allegations about the lack of wound care, ointment, and gauze to self-clean his wound while in the RHU, as well as the difficulty in removing the last four staples from his head, he does not attribute these allegations to any named Defendant or to a specific numbered John/Jane Doe Defendant.

The allegations against Lt. John Doe #3 and PA John Doe #2 are not plausible.  To analyze a constitutional claim based on the failure to provide medical treatment, courts use the same subjective standard just described, *i.e.*, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835, 837 (a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").[8]  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from

---

[8] The standard under the Eighth Amendment applicable to convicted prisoners and under the Fourteenth Amendment applicable to detainees for claims related to medical needs is essentially the same for purposes of the analysis.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Mere disagreement regarding proper medical treatment is insufficient to establish a constitutional violation. *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Finally, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison

officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

Any deliberate indifference claim against Lt. John Doe #3 is undeveloped. He was allegedly aware that Carrasquillo was bleeding, nauseous, and dizzy in the immediate aftermath of the attack and said, "that's what you get." But the meaning of the statement is unclear because Carrasquillo offers no context for it. Carrasquillo also asserts "it took 25 minutes before I was actually escorted . . . to the medical unit" (Compl. at 7), but he does not attribute this delay to Lt. John Doe #3, or provide details to describe whether Lt. John Doe #3 purposefully delayed his being escorted to medical. The claim against PA John Doe #2, based on the sole allegation that it took several phone calls to locate him, is also undeveloped since Carrasquillo does not allege the extent of any delay in locating him, or whether he deliberately delayed Carrasquillo from getting medical attention for his wound.

### E.    Verbal Threats

Carrasquillo may also be attempting to allege a claim based on the verbal threat he describes, namely that when an advocate from the Pennsylvania Prison Society visited him a few days after the attack, an unidentified correctional officer "harassed and intimidated" him, saying "you ain't telling right Carrasquillo? We don't do no telling here." (Compl. at 9.) Any such claim is also not plausible. Verbal threats or taunts, without more, are insufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat

to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  Accordingly, this claim will also be dismissed with leave to amend.

      **F.**     **State Law Claims**

     Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

     Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount

in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Carrasquillo does not allege the citizenship of the parties.  Rather, he provides only the Pennsylvania address of SCI Phoenix for himself and the Defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens.  Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For the reasons stated, the Court will dismiss Carrasquillo's Complaint.  All official capacity claims will be dismissed with prejudice, and all other federal claims will be dismissed without prejudice.  His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Carrasquillo will be afforded an opportunity to file an amended complaint if he is capable of correcting the defects the Court has identified in his claims.  An appropriate Order with additional information about amendment will be entered separately.

**BY THE COURT:**


 **/s/ Hon. Kelley B. Hodge**
_____
**KELLEY B. HODGE, J.**